**Joshua M. Sasaki, P.C.**, OSB No. 964182
josh.sasaki@millernash.com
**Erica A. Clausen**, OSB No. 170902
erica.clausen@millernash.com
**Katie M. Bennett**, OSB No. 221482
katie.bennett@millernash.com
MILLER NASH LLP
US Bancorp Tower
111 SW Fifth Ave, Ste 3400
Portland, OR  97204
Telephone:  503.224.5858
Facsimile:  503.224.0155

    Attorneys for Plaintiff
    Walter E. Nelson Co.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| WALTER E. NELSON CO., an Oregon corporation,<br><br>    Plaintiff,<br><br>v.<br><br>CHARLES A. ACKER, an individual residing in Nebraska; and KERRTAS MARKETING, LLC, a Nebraska limited liability company; and KERRTAS GLOBAL (M) SDN. BHD., a Malaysian private limited public company,<br><br>    Defendants. | CASE No.<br><br>COMPLAINT<br><br>(Breach of Contract; Fraud; Money Had and Received; and Unjust Enrichment)<br><br>JURY TRIAL DEMANDED |

Page 1 -   COMPLAINT

4892-4101-5343.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

Plaintiff Walter E. Nelson Co., ("Plaintiff" or "WENCO") brings this action against Defendants Charles A. Acker, Kerrtas Marketing, LLC, and Kerrtas Global (M) Sdn. Bhd. ("Defendants").

## INTRODUCTORY STATEMENT

1. This case arises out of the Defendants' fraudulent scheme to induce Plaintiff, as well as several other companies, to deposit large sums of money for the purchase of personal protective equipment ("PPE") during the height of the COVID-19 pandemic. In the summer of 2020, WENCO was seeking to meet the increasing demand of its customers for PPE, in particular nitrile gloves. WENCO was introduced to Defendants, who fraudulently misrepresented their ability to obtain nitrile gloves. Based on Defendants' false assurances, WENCO entered into a contract to purchase nitrile gloves from Defendants. Defendants directed WENCO to wire transfer deposits to them, with promises that the gloves would be delivered. Over the next several months, Defendants continually represented that the gloves would be delivered, but that shipment was delayed due to supply chain issues. In reality, Defendants had no product, and instead used WENCO's deposits for their own benefit, including to pay refunds demanded by other customers. As a result of the Defendants' fraudulent scheme, WENCO suffered significant damages. In support of its claims, WENCO alleges as follows:

## PARTIES

2. WENCO is the largest family-owned janitorial, chemical, and paper distributor in the Pacific Northwest. It is an Oregon corporation with its principal place of business in Portland, Oregon.

Page 2 -   COMPLAINT

4892-4101-5343.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

3. Defendant Charles A. Acker ("Mr. Acker") is a resident of the state of Nebraska and the registered agent, member, and manager of Kerrtas Marketing, LLC.

4. Defendant Kerrtas Marketing, LLC is a Nebraska limited liability company ("Kerrtas Marketing") with its principal place of business at Mr. Acker's home address.

5. On information and belief, Defendant Kerrtas Global (M) Sdn. Bhd. is a Malaysian private limited company ("Kerrtas Global") with its principal place of business in Malaysia.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 USC § 1332. There is complete diversity amongst the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7. This Court has personal jurisdiction over Mr. Acker because, as further detailed below, he subjected himself to this Court's jurisdiction by conducting business within the state of Oregon, deriving substantial revenue as a result of his activity in Oregon, and committing tortious and improper acts in Oregon, including the acts alleged below which have caused injury to WENCO, an Oregon resident. Further, Mr. Acker's tortious acts have caused harm to other Oregon residents, including WENCO's customers in Oregon. As a result of Mr. Acker's tortious acts, several Oregon businesses, including hospitals, health clinics, long term and senior care facilities, individual health care providers, police, fire, food manufacturers and processors, and restaurants, experienced delays in obtaining necessary PPE to protect

Page 3 -   COMPLAINT

4892-4101-5343.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

themselves while providing essential services during the COVID-19 pandemic. These Oregon businesses were following up with WENCO almost daily on the status of the nitrile gloves.

    8.  This Court has personal jurisdiction over Defendant Kerrtas Marketing, as it is the alter ego of Mr. Acker. Mr. Acker is the sole member of Kerrtas Marketing and has control over Kerrtas Marketing. Additionally, Kerrtas Marketing subjected itself to this Court's jurisdiction by conducting business within the state of Oregon, deriving substantial revenue as a result of this business, and committing tortious and improper acts in Oregon in conjunction with this business, including those tortious acts alleged herein, which have caused injury to Plaintiff, an Oregon resident. Further, Kerrtas Marketing's tortious acts have caused injuries to other Oregon residents. As a result of Kerrtas Marketing's tortious acts, several Oregon businesses experienced a delay in obtaining necessary PPE to protect themselves while providing essential services during the COVID-19 pandemic.

    9.  This Court has personal jurisdiction over Defendant Kerrtas Global, as it held Mr. Acker out as its agent and representative. Kerrtas Global subjected itself to this Court's jurisdiction by directing its agent, Mr. Acker, to conduct business within the state of Oregon, deriving substantial revenue because of this business, and committing tortious and improper acts in Oregon in conjunction with this business, including those tortious acts alleged herein, which have caused injury to Plaintiff, an Oregon resident. Further, Kerrtas Global's tortious acts have caused injuries to other Oregon residents. As a result of Kerrtas Global's tortious acts, several Oregon businesses experienced a delay in obtaining necessary PPE to protect themselves while providing essential services during the COVID-19 pandemic.

4892-4101-5343.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

## FACTS COMMON TO ALL CLAIMS

10. In March 2020, the COVID-19 pandemic overwhelmed the world's PPE supply. Oregon companies, including nursing homes, hospitals, and other front-line service providers, faced extensive shortages for PPE, particularly nitrile gloves. Nitrile gloves are generally known to be durable and resistant to chemicals.

11. WENCO's customers relied on WENCO's ability to assist customers with PPE shortages, including essential equipment, such as nitrile gloves.

12. On or about June 24, 2020, WENCO was introduced to Mr. Acker (at times referred herein as "Chuck") through a mutual contact, John Bierer. Mr. Acker represented to WENCO that he, by and through his company Kerrtas Marketing, could obtain a supply of nitrile gloves through his manufacturing contacts in Malaysia.

13. On information and belief, Mr. Acker formed Kerrtas Marketing, a limited liability company with the similar name as Kerrtas Global, to act as an agent and marketing vehicle for Kerrtas Global, a supplier of nitrile gloves.

14. At all times relevant, on information and belief, Mr. Acker controlled the business decisions and operations of Kerrtas Marketing.

15. At all times relevant herein, Mr. Acker held himself out as an agent of Kerrtas Global, with the authority to negotiate and enter into contracts on behalf of Kerrtas Global.

16. Mr. Acker represented to potential customers that he had the authority to act on behalf of Kerrtas Global to sell nitrile gloves and to direct customers to make money deposits for the purchase of nitrile gloves from Kerrtas Global.

Page 5 -   COMPLAINT

4892-4101-5343.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

17. Similarly, at all times relevant herein, Kerrtas Global held Mr. Acker out as its representative and agent, with the authority to conduct business with WENCO on behalf of Kerrtas Global. Upon information and belief, at all times relevant hereto, Mr. Acker used Kerrtas Marketing to market nitrile gloves and other PPE, which could be obtained by Kerrtas Global in Malaysia for sale to customers, including WENCO, in the United States.

18. Mr. Acker, individually and as an agent of Kerrtas Marketing and Kerrtas Global, directed numerous communications within Oregon to WENCO's employees between July 2020 and August 2020, soliciting the sale of nitrile gloves to be sourced by Kerrtas Global's manufacturing connections and/or operations in Malaysia.

19. In order to form this business relationship with WENCO, Mr. Acker utilized Mr. Bierer, directing numerous communications regarding the sale of nitrile gloves to WENCO through Mr. Bierer.

20. Specifically, on July 23, 2020, Mr. Acker directed communications to WENCO's Director of Purchasing, Monica Cranswick, in which Mr. Acker stated that Kerrtas Marketing and Kerrtas Global had capacity to fulfill orders of nitrile gloves for "August production and September delivery."

21. During their discussions, Ms. Cranswick expressed concern that Kerrtas Marketing and Kerrtas Global would be sourcing this supply from Top Glove, a glove manufacturer that, upon information and belief, was sanctioned by the United States. In response, Mr. Acker, as a representative of Kerrtas Marketing and Kerrtas Global, directed Mr. Bierer to falsely represent to WENCO that Top Glove was "cleared" of all concerns and its purchases would be coming direct from Top Glove.

Page 6 -   COMPLAINT

4892-4101-5343.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

22. Through Mr. Bierer, Mr. Acker further assured WENCO that it would receive the product "direct from the manufacturer" and that WENCO "would not need to worry about any disruption in the product."

23. Upon information and belief, at or around the same time WENCO was introduced to Mr. Acker, he was simultaneously negotiating contracts with other companies based in the United States to supply them with nitrile gloves, including Acme Paper and Supply Co. ("ACME") and South Central Industries ("SCI").

24. Upon information and belief, on July 29, 2020, ACME submitted a purchase order for nitrile gloves through Mr. Acker, and sent a wire transfer to Kerrtas Global in accordance with Mr. Acker's instructions.

25. Upon information and belief, on July 29, 2020, SCI submitted a purchase order through Mr. Acker for nitrile gloves.

26. Upon information and belief, around the same time that Mr. Acker assured WENCO he could source nitrile gloves "without disruption" from Top Glove, Mr. Acker informed ACME that, due to the "situation" with Top Glove, ACME would not be receiving product from Top Glove, but would instead be receiving product from a different Malaysian manufacturer.

27. Upon information and belief, around this same time, Mr. Acker further informed ACME that they were receiving all the Exam Grade Blue Nitrile product he had.

28. At this time, WENCO had no knowledge of the communications between Mr. Acker and ACME, including communications concerning the quantity and source of the nitrile gloves.

Page 7 -   COMPLAINT

4892-4101-5343.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

29. Then, on August 7, 2020, Mr. Bierer updated Ms. Cranswick that WENCO's gloves would no longer be sourced from Top Glove, but that "we have found ourselves a better more long term solution" and they were finalizing a deal with the "largest Nitrile Manufacturer in the world."

30. On August 19, 2020, Ms. Cranswick informed Mr. Bierer about an alternative supplier of gloves that had approached WENCO, which appeared to be sourced out of Thailand. In response, Mr. Bierer questioned the reliability of that product, representing to Ms. Cranswick that "he and Chuck had not heard of any product coming out of Thailand. We have been guaranteed capacity in both the short and long term. The Walter E. Nelson and Company will not need to worry about any disruption of product."

31. On August 20, 2020, based on Mr. Acker's representations through Mr. Bierer, WENCO placed six purchase orders ("POs") for nitrile gloves, totaling $1,785,000.00. These purchase orders are designated as follows: PO #167103, PO #167109, PO #167110, PO #167111, PO# 167112, and PO# 167114. On September 9, 2020, WENCO sent Mr. Acker PO #167894 for a total of $297,500.00.

32. On September 9, 2020, Mr. Acker directed WENCO to deposit 50% of the purchase price with Kerrtas Global, through a bank in Malaysia. Through Mr. Bierer, Mr. Acker informed WENCO that "we have some customers who like to deal with US Banks. Kerrtas Marketing is US based, and Kerrtas Global is Malaysia…no need to update the W9 to Kerrtas Marketing unless you prefer to deal with a US bank. At the end of the day, the money will end up at Kerrtas Global in Malaysia."

Page 8 -   COMPLAINT

4892-4101-5343.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

33. On or about September 14, 2020, in reliance on Defendants' misrepresentations, WENCO wire transferred a deposit of $892,500.00 to Kerrtas Global.

34. On September 9, 2020, Mr. Acker informed WENCO that there were delays in shipping the nitrile gloves that WENCO had purchased to distribute within Oregon and the United States. Despite the delays, Mr. Acker's co-agent Mr. Bierer assured WENCO that the six purchase orders it placed would ship in the first week of October. Mr. Bierer made further assurances that Kerrtas Global would be able to "supply each month without a problem" and that "we will always stay on top of the market and pricing for you."

35. On September 22, 2020, Mr. Acker directly assured Ms. Cranswick that Defendants were preparing to ship the nitrile gloves and that WENCO would receive them before the end of the week. Despite Mr. Acker's promise, WENCO did not receive the promised nitrile gloves.

36. On September 23, 2020, Mr. Acker informed Ms. Cranswick that they are booking orders "months in advance" and asked Ms. Cranswick if she had "all she needs" for November. Mr. Acker requested that WENCO identify any additional orders that it would need for November, assuring Ms. Cranswick that Defendants could fulfill those orders.

37. Based on Mr. Acker's misrepresentations, WENCO placed an additional purchase order—PO # 169293—for nitrile gloves on October 21, 2020, totaling $261,000.00.

38. At this time, WENCO had transferred a total of $892,500.00 in deposits to Kerrtas Global for the first six purchase orders, plus the initial 50% deposit and subsequent 50% balance due on shipping for PO # 167894 in the amount of $297,500, for a total of $1,190,000.00.

4892-4101-5343.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

39. On October 23, 2020, Mr. Acker informed WENCO that the six purchase orders it had placed would be delayed further due to supply chain issues, but that he had obtained the nitrile gloves through a different supplier, Crecom.

40. Mr. Acker informed WENCO that Defendants were taking the "extra time to do full inspections" of the Crecom gloves.

41. Upon information and belief, ACME received its first shipment of nitrile gloves from Mr. Acker on or around October 26, 2020.

42. Upon information and belief, the order shipped to ACME was inadequate. The shipment was short 780 cases, and the types of sizes of gloves were inconsistent with what ACME had ordered. ACME demanded a refund from Kerrtas Global.

43. Upon information and belief, Mr. Acker informed SCI at the end of October that its shipment of nitrile gloves was delayed, with no date of delivery provided.

44. Meanwhile, on October 27, 2020, at Mr. Acker's direction, WENCO sent a wire transfer to Kerrtas Global for $130,500.00, reflecting a 50% down payment for PO #169293, an additional purchase order, which combined with the previous deposits for PO #167103, PO #167109, PO #167110, PO #167111, PO# 167112, and PO# 167114 amounts to $1,023,000.00 in deposits made by wire transfer to Kerrtas Global.

45. Upon information and belief, ACME received a refund from Kerrtas Global on October 30, 2020 for $66,270.00.

46. Upon information and belief, ACME received an additional refund from Kerrtas Global on November 5, 2020 for $113,700.00.

4892-4101-5343.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

47. Upon information and belief, on November 6, 2020, citing various quality concerns, including that the gloves it received were "stained and used," ACME canceled its next purchase order and demanded additional refunds.

48. On November 9, 2020, Mr. Acker told Ms. Cranswick that he had checked on the first delivery of gloves for WENCO, without specifying a purchase order number, and they would be arriving on November 16, 2020.

49. WENCO was unaware of the quality concerns that ACME cited, and Mr. Acker never communicated these quality concerns to WENCO.

50. WENCO's nitrile gloves did not arrive by November 16, 2020 as promised by Mr. Acker.

51. On November 18, 2020, Mr. Bierer assured Ms. Cranswick that "the product had been completed and inspected, however, waiting for them to release the containers to us to ship."

52. By November 20, 2020, after months of waiting for the nitrile gloves that Mr. Acker had promised to deliver to WENCO, Ms. Cranswick requested further assurances from Mr. Acker that "after we threw all this money at you, we will get gloves" and insisted that all future communications about shipments identify the purchase orders that it referred to. At that point, WENCO had received no gloves. Mr. Acker responded to Ms. Cranswick, promising her that WENCO was his priority, and that all of WENCO's shipments would be arriving in "December, January, and beyond." Mr. Acker promised WENCO he could issue them a refund if these delivery dates did not work for WENCO.

Page 11 - COMPLAINT

4892-4101-5343.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

53.     Mr. Acker further assured WENCO that the first container it had ordered was at the Los Angeles port and that he was paying for it to be loaded onto pallets.

54.     Upon information and belief, on November 24, 2020, ACME canceled its remaining purchase orders for nitrile gloves due to quality issues. Mr. Acker responded that the cancellation was "no problem…I will begin to pull the funds together back from Crecom [the manufacturer of the defective gloves]."

55.     That same day, Mr. Acker emailed Ms. Cranswick stating that "he just got a call from logistics group and they said possibly today still… remember these will already be on pallets!" Mr. Acker further explained that WENCO would not be receiving the total amount or the sizes of gloves that it had ordered. Ms. Cranswick requested a refund for the difference, totaling $75,310.00 and received that refund on December 8, 2020.

56.     On December 7, 2020, Mr. Acker assured Ms. Cranswick that the gloves for PO#167103 would finally be leaving Malaysia on December 12, 2020, and that more would follow.

57.     Upon information and belief, on December 8, 2020, Mr. Acker issued a refund to ACME for $179,970.00, stating that he had to "buy those containers in full [and] then sell [them] to someone else quickly. I did that[.]"

58.     That next day, December 9, 2020, Mr. Acker told Ms. Cranswick that the second container WENCO ordered was about to ship, with the shipment of nitrile gloves coming from Crecom.

Page 12 -  COMPLAINT

4892-4101-5343.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

59. Upon information and belief, on December 22, 2020, Kerrtas Marketing refunded ACME $100,000.00. Then, on December 31, 2020, Kerrtas Marketing refunded ACME an additional $300,000.00.

60. On December 23, 2020, Ms. Cranswick again requested that Mr. Acker refund WENCO's purchase orders. WENCO never received a refund.

61. To date, WENCO has only received one shipment of nitrile gloves from Defendants. This shipment arrived on December 2, 2020, and was short 886 cases.

62. Based upon Mr. Acker's misrepresentations that these nitrile gloves had undergone "full inspections," WENCO delivered these gloves to its customers, who had been waiting since September to have their orders filled.

63. WENCO was then notified by its customers that the gloves they had received had significant quality issues, including that they were soiled, appeared used, and were unfit for use.

64. As a result of Defendants' actions, WENCO was forced to incur significant costs, totaling $3,176,246.74, to source replacement nitrile gloves for its customers due to the material quality concerns their customers reported and the remaining gloves WENCO had never received. WENCO's cost of procuring the replacement gloves is $1,179,188.09 greater than the contracted price between WENCO and Defendants.

65. Around this same time, upon information and belief, SCI was seeking full refunds for the nitrile gloves it had ordered through Mr. Acker, which it had still not received. Like WENCO, SCI never received any refunds.

Page 13 -  COMPLAINT

4892-4101-5343.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

66. Plaintiff incorporates paragraphs 1 to 65 above.

67. As fully set forth above, WENCO entered into an agreement with Defendants for the sale of nitrile gloves.

68. Defendants breached this agreement by failing to provide the agreed upon goods, in the agreed upon condition, and within the agreed upon timeframe. Further, Defendants have failed to provide replacement goods or refund the money owed to WENCO as requested.

69. As a result of Defendants' breach, WENCO has been damaged in the approximate amount of $1,023,000.00, plus $1,179,188.09, plus pre- and post-judgment interest as permitted by law and all other consequential and incidental damages, such as transaction fees and costs.

## SECOND CLAIM FOR RELIEF

### (Fraud)

70. Plaintiff incorporates paragraphs 1 to 69 above.

71. Individually, and as an agent of Kerrtas Marketing and Kerrtas Global, Mr. Acker falsely represented to WENCO that he had a supply nitrile gloves for which WENCO could purchase.

72. Mr. Acker knew that he could not supply WENCO the promised gloves, but made these false representations to deceive and induce WENCO to deposit money to Kerrtas Global in order to further a fraudulent scheme concocted by Mr. Acker to capitalize on the

Page 14 -  COMPLAINT

4892-4101-5343.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

COVID-19 pandemic by inducing multiple companies to purchase nitrile gloves that he could not deliver.

73. For months, Mr. Acker continued to falsely represent the status of the shipments of nitrile gloves ordered by WENCO in order to induce WENCO to place additional purchase orders and deposit additional money to Kerrtas Global.

74. Mr. Acker specifically directed WENCO to deposit the money with Kerrtas Global in an effort to hide behind corporate formalities. In reality, upon information and belief, Mr. Acker is a beneficiary of all deposits WENCO made to Kerrtas Global.

75. In reliance on Mr. Acker's representations and consistent with his directions as an agent of Kerrtas Global, WENCO placed a total of eight purchase orders and made a total deposit of $1,023,000.00 to Kerrtas Global for seven purchase orders it did not receive.

76. Rather than delivering the product to WENCO that it had purchased, Mr. Acker used the money WENCO deposited with Kerrtas Global for Defendants' own benefit and to pay off other companies that were owed refunds.

77. As a result of Defendants' fraudulent misrepresentations, WENCO has sustained economic damages in an amount to be proven at trial, representing deposits paid and the value of promised goods, plus pre- and post-judgment interest as permitted by law and all other consequential and incidental damages, such as transaction fees and costs.

78. Mr. Acker's fraudulent misrepresentations are the proximate cause of WENCO's damages.

Page 15 -  COMPLAINT

4892-4101-5343.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

79. WENCO reserves the right to seek punitive damages to the maximum extent permitted by law.

## THIRD CLAIM FOR RELIEF

(Unjust Enrichment)

80. Plaintiff incorporates paragraphs 1 to 79 above.

81. At Defendants' direction, WENCO deposited $1,023,000.00. Defendants never fulfilled their promise to deliver conforming goods pursuant to the contract.

82. Defendants never returned the deposits as requested by WENCO.

83. Defendants were unjustly enriched in the sum of 1,023,000.00.

## FOURTH CLAIM FOR RELIEF

(Money Had And Received)

84. Plaintiff incorporates paragraphs 1 to 83 above.

85. Mr. Acker, by and through Kerrtas Global and Kerrtas Marketing, received the benefit of WENCO's deposit of $1,023,000.00.

86. As a result of the Defendants' breach of contract and false representations, this money rightfully belongs to WENCO.

87. Defendants never returned the deposits as requested by WENCO.

88. Under the principle of equity and good conscience, Defendants should not be permitted to keep and benefit from the $1,023,000.00 deposited by WENCO.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on all claims so triable.

Page 16 - COMPLAINT

4892-4101-5343.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

## PRAYER FOR RELIEF

WHEREFORE, WENCO prays for judgment in its favor and against Defendants as follows:

  a. On its first claim for relief, for judgment in its favor and against Defendants in an amount to be proven at trial, in the approximate amount of $1,023,000.00, plus $1,179,188.09, plus pre- and post-judgment interest as permitted by law and all other consequential and incidental damages, such as transaction fees and costs;

  b. On its second claim for relief, for judgment in its favor and against Defendants for economic damages in an amount to be proven at trial, representing deposits paid and the value of promised goods, plus pre- and post-judgment interest as permitted by law and all other consequential and incidental damages, such as transaction fees and costs;

  c. On its third claim for relief, for judgment in its favor and against Defendants in an amount to be proven at trial, but not less than $1,023,000.00, plus pre- and post-judgment interest;

  d. On its fourth claim for relief, for judgment in its favor and against Defendants in an amount to be proven at trial, but not less than $1,023,000.00, plus pre- and post-judgment interest;

  e. Punitive damages for WENCO's second claim for relief;

  f. Costs and disbursements; and

/ / /

/ / /

/ / /

Page 17 -  COMPLAINT

4892-4101-5343.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

g.  Any other relief this Court deems just and equitable.

DATED this 22nd day of August, 2022.

MILLER NASH LLP

*s/ Erica A. Clausen*
Joshua M. Sasaki, P.C., OSB No. 964182
josh.sasaki@millernash.com
Erica A. Clausen, OSB No. 170902
erica.clausen@millernash.com
Katie M. Bennett, OSB No. 221482
katie.bennett@millernash.com
Phone: 503.224.5858
Fax: 503.224.0155

Attorneys for Plaintiff Walter E. Nelson Co.

Page 18 - COMPLAINT

4892-4101-5343.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204